**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUEL NAULA, Individually and on Behalf of All Others Similarly Situated,<br><br>         **Plaintiff,**<br><br>-against-<br><br>WEST KABUL KABAB RESTAURANT & CATERING INC. d/b/a KABUL KABAB HOUSE RESTAURANT, ABDUL MOSAVER, MANSOOREH DORUDI, and SAIED RAHBAR, Jointly and Severally,<br><br>         **Defendants.** | **CLASS & COLLECTIVE<br>ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Manuel Naula (the "Plaintiff"), individually and on behalf of all others similarly situated, as collective and class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff worked for Defendants as a dishwasher, porter, food prep, and line cook, at their restaurant located in Flushing, Queens, New York. For his work, during the relevant time

period, Plaintiff was not paid minimum wages for all hours worked and was not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiff brings this action to recover unpaid minimum wages and overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings claims for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants during the relevant NYLL limitations period.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any

specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020.

## THE PARTIES

**Plaintiff:**

8.    Plaintiff Manuel Naula ("Naula") was, at all relevant times, an adult individual residing in Queens County, New York.

9.    Throughout the relevant time period, Plaintiff performed work for Defendants at their restaurant located at 42-51 Main Street, Flushing, New York 11355.

10.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

11.    West Kabul Kabab House Restaurant & Catering Inc. is an active New York

3

Corporation doing business as "Kabul Kabab House" (hereinafter referred to as "Kabul Kabab House" or the "Corporate Defendant"), with its principal place of business at 42-51 Main Street, Flushing, New York 11355.

12.     According to the New York State Department of State, Division of Corporations, West Kabul Kabab House Restaurant & Catering Inc. was registered on January 27, 2000.

13.     At all relevant times, the Corporate Defendant was and continues to be a "corporation engaged in commerce" within the meaning of the FSLA.

14.     Upon information and belief, <u>Defendant Mansooreh Dorudi</u> ("Dorudi") is an owner and operator of the Corporate Defendant.

15.     In corporate filings with the New York State Department of State, Division of Corporations, Dorudi is listed as the Chief Executive Officer of the Corporate Defendant.

16.     Upon information and belief, <u>Defendant Abdul Mosaver</u> ("Mosaver") is an owner and operator of the Corporate Defendant.

17.     Upon information and belief, <u>Defendant Saied Rahbar</u> ("Rahbar") is an owner and operator of the Corporate Defendant.

18.     Defendants Mansooreh, Mosaver, and Rahbar are hereinafter referred to collectively as the "Individual Defendants" and, together with the Corporate Defendant, the "Defendants."

19.     The Individual Defendants maintained operational control over the Corporate Defendant by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiff.

20.     The Individual Defendants jointly employed Plaintiff, and all similarly situated

4

employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

21.    The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiff and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

22.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

23.    At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

24.    At all relevant times, Plaintiff, the opt-in plaintiffs, and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

25.    Upon information and belief, at all relevant times, the Corporate Defendant have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.    Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First and Second Causes of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since January 27, 2018 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Kabul Kabab House, located at 42-51 Main Street, Flushing, New York 11355 (the "Collective Action Members").

27.    A collective action is appropriate in this circumstance because Plaintiff and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

28.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## **FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS**

29.     Pursuant to the NYLL, Plaintiff brings his Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at any time since June 13, 2014 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Kabul Kabab House, located at 42-51 Main Street, Flushing, New York 11355 (the "Class Members").

30.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

31.     The Class Members are so numerous that joinder of all members is impracticable.

32.     Upon information and belief, there are well in excess of forty (40) Class Members.

33.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.   whether Defendants employed Plaintiff and the Class Members within the

meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members at least minimum wage for all hours worked each workweek;

d.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.  whether Defendants failed to pay Plaintiff and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

f.  whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.  whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

i.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

34.  Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class

Members, was a restaurant employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid minimum wage for all hours worked, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

35.    <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

36.    Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

37.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

38.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

39.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Kabul Kabab House Restaurant**

40.     Upon information and belief, and during the relevant time period, Defendants have owned and operated Kabul Kabab House at their main location at 42-51 Main Street, Flushing, New York 11355 since its inception, and Defendants have been in the food and hospitality industry for more than three (3) decades, from in or around 1990.

41.     Upon information and belief, since in or around 2016, Defendants have owned and operated a second location of Kabul Kabab House, located at 247 Post Avenue, Westbury, New York 11590.

42.     Upon information and belief, during the relevant time period, Kabul Kabab House located 42-51 Main Street, Flushing, New York, operated seven (7) days per week, from approximately 11:00 am to approximately 11:00 pm.

43.     According to an article published in the Open City Magazine on February 21, 2011: *"...An Afghan restaurant owned by an Iranian, managed by a Bangladeshi targeting Chinese customers. What better way to capture the changing face of Flushing? The* <u>*Kabul Kabab House,*</u> *located at 42-51 Main Street, has been a staple of the neighborhood for nearly a quarter century and serving a diverse, though mostly South Asian, customer base. Today, sitting in the center of Flushing's Chinatown, it finds itself grappling with how to appeal to the Chinese palate. 'The restaurant has been here longer than I've been alive,' says the energetic 23-year-old manager, Syed Bashar. ...The changes are part of owner Shoreh Dorudi's larger renovation plans to make Kabul Kabab House more competitive and modern. 'When the place first opened it was very Iranian, the food taste was geared to please the Iranian palates,' says Syed. 'But with time, we've had to change our spices and adapt to the palates of the other customers from various other*

*nations.'"* (http://openthecity.org/?pp=1818).

44.     Upon information and belief, during the relevant time period, the Individual Defendants were a constant presence at Kabul Kabab House, where they managed the operations of the restaurant and took an active role in ensuring that the business is run in accordance with their procedures and policies.

45.     Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Kabul Kabab House, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiff's Work for Defendants**

46.     **Plaintiff Manuel Naula** was employed by Defendants as dishwasher, food prep, porter, and line cook, from in or around 1990 to on or about March 1, 2020 (the "Naula Employment Period").

47.     Throughout his entire employment period, from in or around 1990 to in or around March 2020, Plaintiff Naula was scheduled to work seven (7) days per week, with no days off. In or around 2014, Plaintiff Naula developed a health condition and requested Defendants to take a day off, but this request was denied.

48.     Throughout the relevant time period, Plaintiff Naula's schedule was typically Mondays through Sundays from between approximately 10:00 am and 10:30 am to approximately 11:00 pm, shifts of approximately twelve (12) hours per day, for a total of at least approximately eighty-four (84) hours per week.

49.     For his work, during the relevant time period, from in or around 2014 to in or around the beginning of 2015, Plaintiff Naula was paid a purported salary in the amount of four hundred

($400.00) dollars per week, for all hours worked, including those beyond forty (40) in a given workweek.  From in or around 2015 to in or around the beginning of 2016, Plaintiff Naula was paid a purported salary in the amount of four hundred and fifty dollars ($450.00) per week, for all hours worked, including those beyond forty (40) in a given workweek.  From in or around 2016 to in or around the beginning of 2017, Plaintiff Naula was paid a purported salary in the amount of five hundred dollars ($500.00) per week, for all hours worked, including those beyond forty (40) in a given workweek. From in or around 2017 to in or around the end of 2018, Plaintiff Naula was paid a purported salary in the amount of six hundred dollars ($600.00) per week, for all hours worked, including those beyond forty (40) in a given workweek.  During 2019, Plaintiff Naula was paid a purported salary in the amount of eight hundred dollars ($800.00) per week, for all hours worked, including those beyond forty (40) in a given workweek.  During 2020, at the end of his employment period, Plaintiff Naula was paid a purported salary in the amount of one thousand and one hundred dollars ($1,100.00) per week, for all hours worked, including those beyond forty in a given workweek.

50.    As such, and during the relevant time period, Plaintiff Naula was not paid the legally-required minimum wages for all hours worked and was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

51.    Throughout the Naula Employment Period, Plaintiff Naula was not allowed to take breaks during his shifts, let alone a thirty (30)-minute uninterrupted meal break.  If Plaintiff Naula was able to take some time to rest during his shifts, these breaks typically lasted ten (10) to fifteen (15) minutes during his twelve (12) plus hour shifts.

52.    Throughout the Naula Employment Period, Plaintiff Naula was paid weekly from the hands of the owners or managers of the restaurant.  Plaintiff Naula received his wages entirely

in cash, inside of an envelope with his name handwritten on the front, without a pay stub or any other wage statement that provided information about hours worked during the pay period or the wage rate(s) paid during the workweek.   From in or around 2018 to the end of his employment period in or around March 2020, in order to received his weekly wages, Plaintiff Naula was required to sign a document, containing information which he was not able to understand and which Defendants did not explain to him.

53.     Throughout the relevant time period, Defendants did not track the hours worked by Plaintiff Naula through any reliable method.   In or around 2018, Defendants installed at the restaurant a time clock machine which was in the restaurant for a time period of around seven (7) to eight (8) months, but they did not instruct Plaintiff Naula or any of the employees at the restaurant regarding how to track work hours during their shifts.   Upon information and belief, after that short period of time, Defendants removed the time clock machine to be installed at the second location of Kabul Kabab House opened in Long Island.

54.     Throughout the Naula Employment Period, although Plaintiff Naula always worked shifts of more than ten (10) hours per day or split shifts, he did not receive spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days.

55.     Throughout the Naula Employment Period, Plaintiff Naula was not provided with annual wage notices by February 1 of each year and/or when his wage rate changed, or proper wage statements with his wage payments each week.

**<ins>Defendants' Unlawful Corporate Policies</ins>**

56.     Plaintiff and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

57.    Plaintiff has spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiff minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

58.    Plaintiff has spoken with other employees of Defendants who were similarly paid a purported salary each week, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiff overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applies to non-management employees throughout the relevant time period.

59.    Defendants' failure to pay Plaintiff spread-of-hours premiums for days in which Plaintiff has worked a spread of more than ten (10) hours and/or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the relevant time period.

60.    Defendants' policies of paying certain employees on a "salary" basis rather than an hourly basis after January 1, 2011, violated 12 N.Y.C.R.R. § 146-2.5.

61.    Defendants have not provided Plaintiff or their other employees with wage notices at the time of hire or annually by February 1 or when their wage rate changed.

62.    Throughout the relevant time period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

63.     Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements and wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

64.     Upon information and belief, throughout the relevant time period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

65.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

67.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

68.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Collective Action Members)

69.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

71.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

72.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiff and the Class Members)

73.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

75.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID OVERTIME</u>**
**(Brought on Behalf of Plaintiff and the Class Members)**

76.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

78.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiff and the Class Members)**

79.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

81.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiff and the Class Members)**

82.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.     Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay

17

and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

84.     Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
### (Brought on Behalf of Plaintiff and the Class Members)

85.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86.     Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime

rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

87.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.  Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.  Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.  An award of prejudgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

m.      Such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        January 27, 2021

                                        Respectfully submitted,

                                        **PELTON GRAHAM LLC**

                                        By: _____
                                        Brent E. Pelton (BP 1055)
                                        pelton@peltongraham.com
                                        Taylor B. Graham (TG 9607)
                                        graham@peltongraham.com
                                        111 Broadway, Suite 1503
                                        New York, New York 10006
                                        Telephone: (212) 385-9700
                                        Facsimile: (212) 385-0800

                                        *Attorneys for Plaintiff and the putative*
                                        *FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of WEST KABUL KABAB RESTAURANT & CATERING INC. are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective and the Class he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of WEST KABUL KABAB RESTAURANT & CATERING INC., and charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporations as employees during the six (6) year period, plus an additional 228 days preceding the filing of this complaint.

Dated:  January 27, 2021

_____
Brent. E. Pelton

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of West Kabul Kabab Restaurant & Catering Inc, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          Manuel Naula
Signature                                 _____
                                          Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de West Kabul Kabab Restaurant & Catering Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          Manuel Naula
Firma                                     _____
                                          Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.